IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD ERNEST ALLEE,            )      Civil No. 06-187-JE
                                )
                Plaintiff,      )      FINDINGS AND
                                )      RECOMMENDATION
        v.                      )
                                )
OREGON DEPARTMENT OF            )
CORRECTIONS, et al,             )
                                )
                Defendants.     )
_____)


        Donald Ernest Allee
        SID #11357146
        Snake River Correctional Institution
        777 Stanton Boulevard
        Ontario, OR 97914-8335
                Plaintiff Pro Se

        Hardy Myers, Attorney General
        Jacqueline Sadker, Asst. Attorney General
        Department of Justice
        1162 Court Street NE
        Salem, OR 97301-4096
                Attorneys for Defendant



FINDINGS AND RECOMMENDATION - 1

JELDERKS, Magistrate Judge:

Pro se plaintiff Donald Allee brings this action pursuant to 42 U.S.C. § 1983 against the Oregon Department of Corrections (ODOC) and several ODOC correctional officers and employees. Defendants move for summary judgment. The motion should be granted.

## FACTUAL BACKGROUND

Plaintiff is an inmate in custody of the ODOC at the Snake River Correctional Institution (SRCI).

The individually named defendants are current and former ODOC employees.

Defendant Debbie Holland works in the Mail Processing Center. Defendant Brad Cain is the Institutional Security Manager. Defendants Borma Blackburn, James Hanger, Jacqueline Kluger, Janell Rochester, Ricky Flores, Michael Payne, Janet Wayne, Stephen Wedeking, and Robert Real are Correctional Officers. Defendant Garth Gulick is a physican. Defendants Nancy Hansen and Monica Landaverde are registered nurses. Defendant Jamie Miller is a Program Services Manager. Defendant Pat Murray is a Correctional Counselor. Defendant Chris Powell was a Hearings Officer. Defendant Jean Hill is the ODOC Superintendent at SRCI.

In August, 2005, plaintiff sent a letter asking a former inmate to "work up" and return to him a "copy or two" of a

FINDINGS AND RECOMMENDATION - 2

flier that plaintiff had written entitled "Join Our 'Sock-A-Cop' campaign."  The flier stated:

> "No Joke"
> Reality!
>
> Homeless? Hungry? Need Medical and Dental Care?
> Crazy? Suicidal? Elderly, with no Retirement?
>
> PLEASE COME TO OREGON
>
> Upon crossing the Oregon Border like a finish line; find the nearest citizen (or house), walk up to or into them and tell them: "Call the cops or I'll kick your ass"!  If they refuse, "Sock 'em" in the mouth. When the police officer arrives on scene to ask you what is wrong, "Sock 'em" in the mouth.  Under Oregon's "Measure 11" law, you'll get a minimum of 70 months; with blood, 90 months.  You'll get: (1) A hot meal, shower, and bed "in out of the rain" within 6 hours of booking; (2) free medical/dental with meds; (3) free laundry, hygiene items, clothing and shoes;  (4) access to law library to sue Oregon or the U.S. government with; (5) general library books to read, and an educational program if you can't read; (6) free transportation, no driving required; (7) housing at a State prison with a park-like setting, 3 hot meals EVERY day, camaraderie, with possibilities on [sic] an inmate job, canteen, etc.
>
> Help Us Bankrupt This Corrupt State.
> Come Join the "SOCK-A COP" Campaign Today
> Sponsored by: Inmates for a Bankrupted corrupt State 2005

On August 25, 2005, plaintiff received a misconduct report charging him with "Disrespect I," based upon the letter and flier, which had been returned to SRCI because it was undeliverable.  Plaintiff acknowledged writing the letter and flier.

FINDINGS AND RECOMMENDATION - 3

On September 12, 2005, defendant Powell, a former ODOC Hearings Officer, conducted a hearing based upon Lt. Gore's misconduct report and its attachments. Under Oregon Administrative Rule (OAR) 291-105-0028(3), violations must be established by a preponderance of the evidence. After reviewing the evidence and hearing testimony, which included plaintiff's admission that he had written the material, defendant Powell reached the preliminary finding that plaintiff had violated "Rule 2, Disrespect I" by directing hostile or threatening language to or about another person. Defendant Powell recommended that plaintiff be required to serve a 14-day period of segregation, pay a $25 fine, and serve a 14-day period of loss of privileges after his release from segregation. Defendant Hill concurred with that recommendation, and signed an order that made the preliminary order final.

In a letter to defendant Hill, plaintiff sought administrative review of the penalties. In her response, defendant Hill stated that plaintiff's hearing was conducted in compliance with defendant ODOC's administrative rules governing prohibited conduct and procedures for processing disciplinary actions, and asserted that the hearing was conducted in an impartial and unbiased manner. Defendant Hill added that the sanctions imposed were appropriate, and that she found no basis for changing or modifying them.

FINDINGS AND RECOMMENDATION - 4

During the time that he has been in defendant ODOC's custody, plaintiff has sought medical attention many times for pain and reduced range of motion in his knee.  Five x-rays have been taken, and an MRI has been performed, but no source of pain has been identified.  Plaintiff has been treated with pain medication and anti-inflammatories, and has received physical therapy.  Medical records indicate that plaintiff's symptoms and flexibility have improved with these treatments.

## PLAINTIFF'S CLAIMS

Plaintiff brings claims for alleged violations of his rights secured under the First and Eighth Amendments to the United States Constitution, and for alleged violation of the Americans With Disabilities Act (ADA).

Plaintiff's First Amendment claim alleges that defendants violated plaintiff's speech rights by sanctioning him for creating the "Sock A Cop" flier.

Plaintiff's Eighth Amendment Claim alleges that defendants denied plaintiff "civilized treatment" by denying him use of prosthetic devices.

Plaintiff's ADA claim alleges that defendant discriminated against him on the basis of physical disability.

Plaintiff seeks monetary damages and injunctive relief.

FINDINGS AND RECOMMENDATION - 5

**STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. Id. at 630-31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

FINDINGS AND RECOMMENDATION - 6

**DISCUSSION**

I. <u>Effect of Eleventh Amendment on Claim Against Defendant</u>

<u>ODOC</u>

As defendants correctly note, the Eleventh Amendment to the United States Constitution provides that the judicial powers of the United States do not extend to any action prosecuted against a state.  A state may waive its sovereign immunity by expressly consenting to defend an action in federal court.  <u>See</u>, <u>e.g.</u>, <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974).  Actions against a state Board of Corrections are generally barred by the Eleventh Amendment.  <u>See</u> <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978) (action against State Board of Corrections barred by Eleventh Amendment).

There is no evidence in the record supporting the conclusion that Oregon has waived its Eleventh Amendment immunity from actions brought against it in federal court, and no reported decisions support that conclusion.  Accordingly, defendant ODOC is entitled to summary judgment on plaintiff's claims because an action brought against it is an action against the state.


II. <u>Defendants' "Respondeat Superior" defense</u>

Defendants correctly note that state officials may not be liable pursuant to § 1983 based upon respondeat superior

FINDINGS AND RECOMMENDATION - 7

liability.  Monell v. Department of Social Services, 436 U.S. 658, 691-694 (1978); Webb v. Sloan, 330 F.3d 1158, 1164 (9th Cir. 2003).  They also correctly note that a supervisor can be liable under § 1983 only if the supervisor was personally involved in the alleged violation, or if there is a sufficient causal connection between the supervisor's conduct and the violation.

I disagree, however, with defendants' contention that defendant Hill is entitled to summary judgment because plaintiff has not alleged facts that would support the conclusion that she "participated in or directed the alleged violations . . . or . . . engaged in any wrongful conduct that would have a causal connection to the alleged deprivation." As discussed below, all defendants are entitled to summary judgment on other grounds.  However, the record before the court includes a copy of defendant Hill's letter to plaintiff stating that the hearing was conducted in full compliance with applicable rules, that the sanctions imposed were appropriate, and that there was no basis for modifying the sanctions. Supervisors who approve conduct that violates an individual's rights, or who fail to intervene when they have a realistic opportunity to prevent such violations, may be liable under § 1983.  E.g., Lanigan v. Village of East Hazel Crest, 110 F.3d 467, 477 (7th Cir. 1997).  If there was evidence from which a reasonable trier of fact could conclude that plaintiff's

FINDINGS AND RECOMMENDATION - 8

constitutionally-protected rights were violated, Hill's participation in the disciplinary process upon which plaintiff's First Amendment Claim is based was sufficient that she could be liable pursuant to § 1983 for approving the violation and affirming improper sanctions.

III. Merits of Plaintiff's Constitutional Claims

A. Alleged Violations of Rights Secured Under First Amendment

In order to establish a violation of rights secured under the First Amendment, a plaintiff must demonstrate that a speech restriction impermissibly infringes upon a free speech right. Turner v. Safley, 482 U.S. 78, 89 (1987).

An inmate's constitutionally-protected rights may be diminished by prison regulations that are reasonably related to legitimate penological interests. Thornburgh v. Abbott, 490 U.S. 401, 407-09 (1989). In analyzing an inmate's assertion that a regulation unlawfully infringes upon a protected right, a court must balance the inmate's protected rights against the state's interest in efficiently operating its prisons. Turner, 482 U.S. at 89.

In reviewing challenges to regulations that affect constitutionally-protected rights, courts consider whether there is a rational relationship between the restriction and the government interest upon which the regulation is based,

FINDINGS AND RECOMMENDATION - 9

whether alternative avenues of exercising the right in
question remain open to the inmate, whether accommodation of
the right will negatively influence guards, other inmates, and
prison resources in general, and whether there are other ready
alternatives to the regulation which could accomplish the
state's goals.  <u>Turner</u>, 482 U.S. 89-90.

Here, plaintiff was penalized for creating a flier that
appeared to advocate violence against law enforcement officers
and other citizens in Oregon.  A reasonable trier of fact
applying the <u>Turner</u> factors to the facts before the court
could only conclude that defendants could lawfully sanction
plaintiff as they did for creating the "Sock-A-Cop" flier.
The first of the relevant factors--whether there is a rational
relationship between the restriction and a government
interest, is met because the prison has a compelling interest
in preventing inmates from circulating materials that advocate
violence.  <u>See</u>, <u>e.g.</u>, <u>Stefanow v. McFadden</u>, 103 F.3d 1466,
1472 (9th Cir. 1996); <u>Prison Legal News v. Cook</u>, 238 F.3d 1145,
1150 (9th Cir. 2001) (first <u>Turner</u> factor satisfied if inmate
lacks evidence to refute common-sense connection between
prison regulation and asserted objective).

The second <u>Turner</u> factor is satisfied because there is no
evidence that plaintiff could not express the ideas set out in
his flier, except for his apparent advocacy of violence,
without being penalized.

FINDINGS AND RECOMMENDATION - 10

The third <u>Turner</u> factor, whether allowing the expression
in question would have an adverse impact on guards and other
inmates, is also satisfied, because allowing inmates to
circulate materials advocating violence could clearly endanger
SRCI employees and inmates.

The fourth <u>Turner</u> factor is satisfied because there are
no readily available alternatives to the practice of
prohibiting inmates from circulating materials that advocate
violence.  The regulation in question was reasonably related
to a valid penological interest in operating a safe and secure
correctional institution, and the record establishes that
plaintiff violated the regulation.  Defendants' motion for
summary judgment on plaintiff's first claim should be granted.


B. <u>Plaintiff's Eighth Amendment Claims</u>

Plaintiff alleges that defendants have violated his
rights secured under the Eighth Amendment by denying him use
of a cane and a wheelchair.


1. <u>Standards for evaluating Eight Amendment Claims</u>

In order to prevail on a claim that failure to provide
adequate medical care constitutes cruel punishment in
violation of the Eighth Amendment, an inmate must establish
that a public official was or is deliberately indifferent to
his serious medical needs.  <u>Estelle v. Gamble</u>, 429 U.S. 97,

FINDINGS AND RECOMMENDATION - 11

106 (1976).  Deliberate indifference is shown only where an official "knows of and disregards an excessive risk of inmate health and safety . . . ."  Farmer v. Brennan, 511 U.S. 825, 835 (1994).  There is both an objective and subjective component of an actionable Eighth Amendment violation. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).  The inmate must demonstrate that the deprivation suffered was "objectively sufficiently serious," and that prison officials had a "sufficiently culpable state of mind" in allowing the deprivation to take place.  Wallis v. Baldwin, 70 F.3d 1074, 1076 (9th Cir. 1995) (quoting Wilson v. Seiter, 501 U.S. 294, 298, 302-303 (1991)).  A difference in medical opinion between doctors concerning the appropriate treatment does not in itself constitute deliberate indifference to serious medical needs.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

2. Analysis

       Defendants here are entitled to summary judgment on plaintiff's Eighth Amendment claims because plaintiff has failed to produce evidence supporting the conclusion that he has a "serious medical need."  Even if plaintiff had made a showing that was sufficient to create material issues of fact as to that question, defendants would be entitled to summary judgment because there is no evidence that they were indifferent, deliberately or otherwise, to plaintiff's medical

FINDINGS AND RECOMMENDATION - 12

needs.  Plaintiff has been examined on numerous occasions in response to his complaints about knee pain.  X-rays were taken five times, and an MRI was performed in an effort to determine the source of plaintiff's right knee pain.  However, despite repeated examinations, no serious medical problem with the knee has been detected.

Plaintiff's medical record does not include evidence supporting the conclusion that defendants have demonstrated indifference to plaintiff's complaints of knee pain. Plaintiff has received physical therapy, and anti-inflammatory medications and pain relievers have been prescribed to ease his discomfort.  Assistive devices, including crutches, cane, and a wheelchair for traveling longer distances have been prescribed during some periods, depending on the current evaluation of plaintiff's medical needs.  Though plaintiff's access to a wheelchair was discontinued in early 2006, and an order for a cane was discontinued in August of that year, the cane order was reinstated for one year on October 27, 2006. Defendants have produced unrebutted evidence supporting the conclusion that patients are encouraged to ambulate as much as possible to improve their quality of life following a knee injury.  Under these circumstances, even if plaintiff could establish that his knee condition constituted a serious medical need, he cannot establish that defendants demonstrated indifference to his medical problem.

C. Qualified Immunity Defense

    Defendants contend that, even if plaintiff could
establish a violation of his First or Eighth Amendment rights,
summary judgment should be granted in favor of the individual
defendants because they are entitled to qualified immunity.  I
need not and do not reach this issue because plaintiff cannot
establish that defendants' conduct violated any
constitutionally-protected right.


IV. Merits of ADA Claim

    Plaintiff alleges, because of his disability, certain
defendants denied him an opportunity to shower and receive
clean clothing.  He also alleges that he was denied use a
wheelchair for some period of time.  Plaintiff alleges that
this conduct violated the Americans With Disabilities Act
(ADA), 42 U.S.C. § 12102 et seq.

    In order to prevail on a claim of disability
discrimination pursuant to the ADA, a plaintiff must establish
that he is an individual with a disability; that he is
otherwise qualified to participate in or receive the benefit
of a public entity's services, programs, or activities; that
he was excluded from participating in or benefitting from a
public entity's services or was otherwise discriminated
against by the public entity; and that he was excluded because
of his disability.  McGary v. City of Portland, 386 F.3d 1259,

FINDINGS AND RECOMMENDATION - 14

1265 (9th Cir. 2004).  A disabled person is one who has a
physical or mental impairment that "substantially limits one
or more of the major life activities," has a record of such an
impairment, or is perceived as having such an impairment.
42 U.S.C. § 12.102(2).

Defendants are entitled to summary judgment on
plaintiff's ADA claim for several reasons.  First, the medical
evidence before the court does not support the conclusion that
plaintiff has, or is perceived as having, an impairment within
the definition of the ADA.  Though there is evidence that
plaintiff has a knee problem that reduces his mobility,
plaintiff's medical record does not support the conclusion
that he has an impairment that "substantially limits" a life
activity.  The objective medical evidence, including an MRI
and X-rays taken on a number of occasions, shows no
significant abnormality in plaintiff's knee.  In addition,
there is no evidence that defendants regard plaintiff as
having an  impairment that substantially limits any of
plaintiff's major life activities.  Instead, it appears that
the defendants consider plaintiff's knee condition to be
relatively minor, and to impose relatively minor limitations
on plaintiff's activities.

In addition to the absence of evidence that plaintiff has
a medical problem that constitutes a disability within the
meaning of the ADA, the record before the court does not

include evidence supporting the conclusion that plaintiff was or is discriminated against in any manner.  As noted above, plaintiff has received significant medical attention based upon his complaints of knee pain, and has been provided with devices to assist in his mobility when treating physicians have thought those were appropriate.  The record supports only the conclusion that the removal of those devices at one time was based upon a medical conclusion that plaintiff did not need them and would benefit from their absence.

Finally, even if there was evidence that plaintiff's knee problem constituted a disability within the meaning of the ADA, and evidence that plaintiff was subjected to some form of discrimination, there is no evidence from which a reasonable trier of fact could conclude that the discrimination was based upon plaintiff's impairment, record of impairment, or defendants' perception of plaintiff as impaired.

Defendants' motion for summary judgment on plaintiff's ADA claim should be granted.


## CONCLUSION

Defendants' motion for summary judgment (#67) should be GRANTED.

**SCHEDULING ORDER**

The above Findings and Recommendation are referred
to a United States District Judge for review.  Objections, if
any, are due June 15, 2007.  If no objections are filed,
review of the Findings and Recommendation will go under
advisement on that date.

A party may respond to another party's objections
within 10 days after service of a copy of the objection.
If objections are filed, review of the Findings and
Recommendation will go under advisement upon receipt of
the response, or the latest date for filing a response.

DATED this 30th day of May, 2007.


/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 17